**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES of AMERICA<br><br>v.<br><br>ALDO FERNANDO GUERRERO CLAVIJO, et. al.<br><br>Defendants. | CRIMINAL NO. 11-CR-10187-PBS |

**MEMORANDUM AND ORDER**

June 21, 2013

Saris, C.J.

### I. INTRODUCTION

Defendants Aldo Fernando Guerrero Clavijo, Rigoberto Muriel Torres, Pedro Jose Amado-Montilla, Wilson Orlando Serna-Hoyos, and Juan Carlos Gomez-Preciado move to suppress evidence derived from the interception of telephone calls by the Colombian National Police ("CNP") on the ground that these communications were intercepted in violation of their due process rights under the Fifth Amendment. A sixteen count indictment charges defendants variously with conspiracy to commit money laundering, substantive money laundering, conspiracy to import cocaine, and aiding and abetting.  They are all Colombian citizens who were present in Colombia during all times alleged in the indictment. They were arrested in Colombia in 2011 and extradited.

After an evidentiary hearing, at which Colombian prosecutors Luz Angela Bahamon Florez and Patricia Jacqueline Feria Bello testified, the motion is **DENIED**.

## II. FACTS

A.   **Colombian Wiretap Authorization Process**

The Colombian wiretap authorization process is governed by The Penal Procedural Code, Law 906 of 2004 ("Penal Code"), and by the Colombian Constitution. Article 235 of The Penal Code provides:

> The prosecutor may order, with the sole purpose to search for material probative elements and physical evidence, that interception occur through recordings or similar process of telephonic, radiotelephonic or similar communications that use the electromagnetic spectrum, which information be relevant for the investigation or proceeding.

The written order must be based on a proper foundation referred to as "motivos fundados". "Motivos fundados" is described in Article 221 as evidence that "establish[es] with authenticity the connection of the asset to be searched with the investigated crime." Ex. 1.

These "motivos fundados" may be based on information obtained from either "formal" or "informal" sources. Formal sources may include criminal accusations filed with the court or special requests made by the Attorney General's office, while informal sources may include anonymous tips, newspaper articles,

or international cooperation efforts and shared information. Suppress Hr'g Tr. 58:20-59:3, May 10, 2013. Prosecutors receive this information through reports submitted by the Judicial Police detailing the evidence they have collected. Id. at 61:5-62:11. Before authorizing a wiretap based on the Judicial Police report, the prosecutor applies a "test of proportionality", balancing the weight of the "motivos fundados" with the privacy rights of the telephone subscriber under investigation. Id. at 28:14-23. The balancing test was mandated by the Constitutional Court in a decision interpreting the constitutionality of the wiretap provisions in the Penal Code. Id. at 32:10-12.

    Under Article 235, once executed, the wiretap has a maximum duration of three months. At the conclusion of these three months, the prosecutor must go before a "Judge of Guarantee" in order to "legalize" or legitimate the wiretap and the evidence it produced. Prosecutor Bahamon, the lead Colombian prosecutor in this case, referred to this as putting the results of the wiretap "under judicial control." Id. at 70:23-24. Article 237 of the Penal Code governs the hearing before the "Judge of Guarantee" and requires that the prosecutor make an oral presentation regarding the "motivos fundados" supporting the wiretap and give a summary of the results obtained. These hearings are recorded and a summary of the decision is issued in writing. Id. at 70:25-71:13.

If the judge approves of the wiretap, its results are "legalized" and may be used in court or in further legal proceedings. If the judge finds that the wiretap was improperly authorized, the results are not admissible. At the "legalization" hearing, the judge may also grant an extension of time for the wiretap investigation for another three months, after which no extensions are permitted. Id. at 34:8-35:11. This process must be followed for each phone number for each target under investigation. Id. at 38:17-39:9.

### B.   The DEA's Role in Wiretap Authorizations

The first evidence of DEA involvement in this investigation occurred in November 2007 in a separate but related case. The Colombian Prosecutor's Office authorized wiretaps based on an "informal" tip received from the DEA. Pursuant to the procedure described above, this tip was incorporated into a source report submitted by the Judicial Police to the Prosecutor's Office, which read: "As part of the development of our investigative work . . . [an officer] received from the DEA . . . on November 27 of the current year . . . information regarding an organization that appears to be involved in the trafficking of cocaine in the United States and Money Laundering in Colombia. . ." Ex. 4. Based on this source report, an authorization of a wiretap was issued in December 2007. Ex. 5. This wiretap was never executed.

The next instance of DEA involvement occurred on May 30, 2008, when DEA agent John Oldano sent a letter to an investigator in the Money Laundering Unit of the CNP, requesting that the CNP intercept a number of Colombia cellphones pursuant to the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances. Ex. 8. The letter contained a brief description of the DEA investigation and cited summarily to "several sources of information, including conversations between an undercover DEA agent and unidentified members of the organization, and information provided by the DEA from a confidential source." Id. This letter was used as the basis for the informal source report authored by a member of the Judicial Police dated June 3, 2008 that was submitted to the Prosecutor's Office. Based on this report, and in compliance with the treaty request, Ms. Bahamon issued a wiretap authorization that was executed in June 2008. The government does not seek to introduce any evidence from this initial 2008 wiretap.

The DEA submitted a Vienna Convention Mutual Legal Assistance Request to Colombia for assistance in the ongoing DEA investigation on April 11, 2008, requesting that the Prosecutor's Office "seek the appropriate judicial authorization to intercept and record wire and electronic communications . . ." over certain telephone numbers in Colombia, including defendant Guerrero's phone number, and requested the CNP to seek judicial authorization to intercept phone calls "to and from any

additional telephones (both fixed and cellular) identified during the monitoring of the telephone listed above . . ." Opp'n. Ex. A. Pursuant to this request, beginning on March 12, 2009, the CNP received the appropriate authorization to intercept and record one of Guerrero's cellular phones. On December 17, 2010, the government submitted a supplemental request seeking assistance from Colombian authorities in fully identifying the users of each of the cellular phones that were the subject of the ongoing investigation. Opp'n. Ex. B. The government only seeks to introduce evidence obtained pursuant to these formal treaty requests.

### III. DISCUSSION

Defendants argue that admitting the evidence of telephone conversations obtained through the Colombian wiretap authorization procedure would violate "fundamental elements of fairness" guaranteed by the Due Process clause of the Fifth Amendment. Spencer v. Texas, 385 U.S. 554, 563-64 (1976). They argue that Colombian authorities intercepted their phone calls without any showing of "probable cause." In their view, a prosecutor simply "rubberstamps" the DEA's information regarding suspected illegal activity, and the Judge of Guarantee merely serves as a second "rubberstamp".

The standard used to evaluate claimed due process violations is steep. Only those convictions based on evidence obtained by

6

methods "so brutal and so offensive to human dignity" that they "shock[] the conscience" violate due process. Rochin v. California, 342 U.S. 165, 172-74 (1952) (holding that "stomach pumping" defendant to remove swallowed capsules violated Due Process clause of the Fourteenth Amendment). Conduct that interferes with rights "implicit in the concept of ordered liberty" can also constitute a due process violation. See United States v. Salerno, 481 U.S. 739, 746 (1987) (quotations omitted). The First Circuit has clarified that the "fundamental fairness" standard is a "sounding line for outrageousness" and is not an alternative standard. United States v. Santana, 6 F.3d 1, 3-4 (1st Cir. 1993) (holding that the government's conduct in supplying and failing to recover over 13 grams of 92% pure heroin to gain confidence of drug traffickers was not outrageous despite the fact that "delivery of the sample ran a palpable risk of ushering it into the marketplace"). It cautioned that the doctrine's application is regularly rejected. Id. at 4 (stating that the "outrageous misconduct" doctrine is "moribund" and that "in practice, courts have rejected its application with almost monotonous regularity"). The exclusion of otherwise relevant evidence under this doctrine is limited to the "most extreme of cases." United States v. Byram, 145 F.3d 405, 408 (1st Cir. 1998) (holding that police officer's false assurance that defendant was not in danger of prosecution before his testimony at another

7

individual's trial was not so outrageous as to shock the conscience and thus was not a violation of due process).

While defendants appear to concede that the CNP's wiretapping of their conversations is not a violation of the Fourth Amendment's prohibition on unreasonable searches and seizures, they urge the Court to consider the "broad principles" of the Fourth Amendment in evaluating their Fifth Amendment claim of fundamental unfairness. The Supreme Court has unequivocally held that the Fourth Amendment does not apply to nonresident aliens in foreign territory. <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 266 (1990) (involving the DEA search in Mexico of a Mexican citizen's residence while he was in custody in the United States). It explained: "The purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory." <u>Id.</u> Indeed in <u>Verdugo-Urquidez</u>, the Supreme Court "rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States." <u>Id.</u> at 269. Therefore, the Supreme Court seems to have precluded claims under the Fourth and Fifth Amendment challenging an extra-territorial search of nonresident aliens simply because they do not meet the requirements of the Fourth Amendment.

Courts routinely have upheld the introduction of foreign

wiretaps. See United States v. Emmanuel, 565 F.3d 1324, 1330-31 (11th Cir. 2009)(holding that Bahamian officials in obtaining wiretap of narcotics trafficking suspect did not shock the judicial conscience, even though no judicial review was required before wiretap was approved); United States v. Barona, 56 F.3d 1087, 1091 (9th Cir. 1995) (wiretaps obtained in compliance with laws of Denmark did not "shock the conscience"); see also United States v. Londono-Cardona, 2008 WL 313473, at *1 (D. Mass. Feb. 1, 2008) (holding that "there is no reason to inquire whether the execution of the [Colombian] wiretaps would comport with Fourth Amendment standards" because the Fourth Amendment was "inapplicable" to wiretaps authorized by Colombian authorities in a case involving foreign residents in Colombia); United States v. Ceren, 2010 WL 2639589, at *2 (S.D.Fl. June 4, 2010) ("The [Colombian] wiretaps in the instant case do not shock the judicial conscience. Here there is no evidence that the circumstances surrounding the wiretaps were so extreme that they would shock the judicial conscience."); United States v. Castrillon, 2007 WL 2398810, at *3 (S.D.N.Y. Aug. 15, 2007) (holding that "the conduct identified by the defendants as conscience-shocking-that Colombian law does not require a neutral and detached magistrate to review wiretap applications [or] a showing of probable cause . . . falls far short of that standard").

    Here, there is no evidence that the wiretapping of

defendants' phone calls undermines fundamental elements of fairness. Although the wiretap authorization procedures in Colombia are less rigorous than the requirements of Title III of the Omnibus Control and Safe Streets Act of 1968, 18 U.S.C. § 2510-2520 and would violate the Fourth Amendment, they are not "outrageous" or "shocking."  While defendants argue that the Colombian Police are simply doing the DEA's bidding, the DEA was submitting the request for interception of foreign citizens' calls via an international treaty. Moreover, even if the DEA was in a joint venture with the Colombian government, Defendants would not be entitled to the "joint venture" exception to the "general rule that evidence obtained from searches carried out by foreign officials in their own countries is admissible in United States courts" because that exception is not available to nonresident aliens in foreign countries. See Emmanuel, 565 F.3d at 1330-31 (holding that the "joint venture" exception "is based on a defendant's Fourth Amendment rights" and is not available to a foreign citizen and resident who "cannot show that he is entitled to the protections of the Fourth Amendment"). There is no evidence the prosecutor failed to comply in good faith with Colombian law, and Judges of Guarantee "legalized" the wiretap by finding sufficient evidence under a standard of "motivos

fundados"[1] which is less rigorous than probable cause, but akin to it. See generally Luz E. Nagle, Process Issues of Colombia's New Accusatory System, 14 Sw. J. L. & Trade Am. 223, 251 (2008) (stating that the role of the "Judge of Guarantee" is "one of the great innovations of the new system. This judge must guarantee the constitutionality of the proceedings, by being especially vigilant of the principles of liberty so that such principles are the general norm and not the exception.").

The Defendants are Colombian citizens and the phones were intercepted in Colombia and involved Colombian carriers that are not subject to Title III. In these circumstances, the Court finds there is no Fifth Amendment Due Process claim.

### IV. ORDER

The Court **DENIES** Defendants' motion to suppress.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge

---

[1] The court could find no caselaw construing the term and the parties presented no expert testimony on its precise meaning.