UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-10187-PBS |
| | ) | |
| ALDO FERNANDO | ) | |
| GUERRERO-CLAVIJO, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' OPPOSITION TO PRO SE
MOTION PURSUANT TO 28 U.S.C. § 2255**

The United States respectfully submits that the pro se motion filed by petitioner Aldo Fernando Guerrero-Clavijo, a.k.a. "Rolo" ("Guerrero") should be denied without the need of an evidentiary or further hearing.

**Procedural History**

On November 25, 2011, a federal grand jury in the District of Massachusetts returned an indictment charging Guerrero and 19 co-defendants with multiple drug trafficking and money laundering violations.  Guerrero was charged with money laundering conspiracy, in violation of 18 U.S.C. §1956(h) (Count 1); conspiracy to import cocaine and to distribute and manufacture cocaine for unlawful importation, in violation of 21 U.S.C. §§963, 962, 959(a), and 960(b)(1)(B) (Count 2); international money laundering and aiding and abetting, in violation of 18 U.S.C. §§1956(a)(2)(B)(i) and 2 (Counts 4-6, 8-9, and 11-12); and money laundering, in violation of 18 U.S.C. §1956(a)(1) (Counts 13-16).

On July 12, 2013, Guerrero pled guilty to Counts 1-2, 4-6, 8-9, and 11-16 of the indictment.  On January 21, 2014, the court sentenced Guerrero to 144 months' imprisonment and three years of supervised release.

On September 19, 2014, Guerrero filed a direct appeal with the First Circuit challenging his sentence on the grounds that he should not have received a role in the offense enhancement and that he received disparate sentence as related to other similarly situated defendants. The First Circuit issued a Judgement on March 12, 2015, denying Guerrero's appeal and affirming his conviction and sentence.

On July 13, 2015, Guerrero also filed a motion pursuant to Amendment 782. The court denied the motion on November 16, 2015. Guerrero took a pro se brief to the First Circuit which was denied on June 26, 2016.

Guerrero filed the instant § 2255 petition on June 1, 2016 (Doc. 908 and 909).

### Brief Factual Overview

Guerrero became a primary target of a multi-year-long undercover investigation by the Drug Enforcement Administration ("DEA") into the laundering of millions of dollars of drug proceeds in the United States and Europe by a Colombian drug cartel known as "la Oficina de Envigado."  The investigation revealed that Guerrero would arrange for couriers holding the organization's drug money in the United States, including Massachusetts, to deliver the money to individuals who he believed to be money launderers, but in fact were DEA undercover agents. Guerrero also provided the bank accounts to the undercover agents through which the money was laundered back to Colombia through the black market currency exchange – money exchange businesses in Colombia and Venezuela – as well as other businesses and financial institutions in a manner designed to conceal the ownership of the drug money and illicit nature of the funds. Guerrero was ultimately responsible for delivering the laundered drug money to the owners of the narcotics.

Between at least February 2008 and May 2011, the DEA uncovered and developed substantial evidence of Guerrero arranging money laundering transactions and attempting to import hundreds of kilograms of cocaine into the United States. In particular, numerous recorded telephone and internet communications revealed that Guerrero: (1) arranged the exchange of drug money from couriers holding his cartel's drug money in the United States to individuals he thought were money launderers (but who in actuality were DEA undercover agents); (2) directed these presumed money launders to deposit the money in bank accounts he obtained and provided them, through which the money would be laundered back to Colombia via the country's black market currency exchange; and (3) ensured the delivery of the laundered drug money back to the owners of the narcotics.  On at least 44 different occasions over the next three years, Guerrero orchestrated the pick-up of drug money across three continents and provided the bank accounts to deposit the money so it could be laundered through Venezuelan and Colombia currency exchange markets and, in total, was involved in the laundering of at least $14 million in proceeds from drug trafficking.

During this same time period, Guerrero also attempted on numerous occasions to broker the sale and importation into the United States of large quantities of cocaine.  In 2009, Guerrero arranged for an associate to meet with an undercover agent, after having instructed the associate as to what deals it was possible to make.  On separate occasions in 2010, Guerrero offered to organize the sale of hundreds of kilograms of cocaine in Houston, Texas, in Colombia.  The following year, he delivered and arranged payment for a kilogram sample of cocaine in an ongoing effort to negotiate the sale and importation of over 1,000 kilograms of cocaine.

**Sentencing**

A.     **The Presentence Report**

The Probation Office determined that Guerrero's Total Offense Level ("TOL") was 39,

which was derived from the following calculations:

- a base offense level of 28 under USSG §2S1.1(a)(2) and USSG §2B1.1(b)(1)(K) because Guerrero was accountable for at least $12 million in laundered funds;

- an increase of four levels under USSG §2S1.1(b)(2)(C) because Guerrero regularly engaged in laundering funds over an extended period of time;

- an adjustment of four levels under USSG §3B1.1(a) because Guerrero was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive;

- a reduction of three levels under USSG §3E1.1(a) and (b) for acceptance of responsibility.

[PSR ¶¶255-263].  Guerrero's TOL of 39 and Criminal History Category ("CHC") of I yielded

an advisory Guidelines sentencing range ("GSR") of 262 to 327 months.  [PSR ¶311].

Guerrero's CJA court appointed attorney objected to the Probation Office's determination

that he merited an organizer or leader enhancement, asserting that he was an independent

contractor who was foolishly willing to run the risks involved in international money laundering

and that no role-in-the-offense upward adjustment was warranted.  [PSR, Def. Obj. #65].  The

Probation Office responded that Guerrero merited the adjustment because he arranged for

couriers holding the drug money in the United States to deliver the money to individuals he

believed to be money launderers; provided the bank accounts to the undercover agents through

which the money was laundered back to Colombia through the black market currency exchange;

and was ultimately responsible for delivering the laundered drug money to the owners of the

narcotics.

The government, for its part, argued in a sentencing memorandum that a three-level adjustment for being a manager or supervisor of criminal activity was appropriate.  [S.App.100]. Although the government noted that the Probation Office's recommendation that Guerrero receive a four-level adjustment for being an organizer or leader was "difficult to dispute given Guerrero's central role in the investigation and his apparent control over several other criminal participants," it also noted that during the evidentiary hearings, Trooper Cepero testified that the nature of the organization was more akin to a linear network than a hierarchical organization, where the person in charge of the money laundering contract varied.   For this reason, the government argued that a three-level adjustment for being a manager or supervisor was merited.

**B.      The Evidentiary Hearing**

The district court conducted an evidentiary hearing on October 2, 3, 4, and 22, 2013.  The principal witness at the evidentiary hearing was Massachusetts State Police Trooper Jaime Cepero, who acted as an undercover agent in this case while working as part of a DEA task force.  Cepero's role was to receive drug money that was to be laundered, enter that money into the banking system, and then deliver it into bank accounts provided by the brokers or individuals who were seeking to launder the drug money.

Trooper Cepero testified that during the undercover operation, Guerrero or Carlos Orlando Zambrano-Briceno, one of Guerrero's co-defendants, would call him and ask if he had the capability of picking up a specified amount of cash at a particular location, putting it into the banking system, and then delivering it into accounts they provided.  Cepero also testified that he met in person with Guerrero on four occasions and that, during the one meeting in Bogota,

Colombia, in December 2010, Juan Carlos Gomez-Preciado, another co-defendant, also was present. Cepero testified that Guerrero did "[m]ost of the talking" during this meeting and that Gomez-Preciado would "chime in from time to time" to "agree[] to what Mr. [Guerrero] was saying and sometimes adding to what he was saying"; in other words, Cepero testified, Guerrero was the "main person" he was interacting with during the meeting. On cross-examination by Gomez-Preciado's counsel, Cepero testified that while he received instructions from Guerrero and others about setting up and making the wire transfers for the laundered money, but never received such instructions from Gomez-Preciado. Thus, Cepero testified, when he wired $2,714.36 through Western Union to Gomez-Preciado, it was Guerrero who asked Cepero to wire Gomez-Preciado the money, and it was Guerrero who provided Cepero with the information to make the wire transfer, including providing Gomez-Preciado's date of birth and address.

## C.     The Sentencing Hearing

The district court convened a sentencing hearing on January 21, 2014. Consistent with the position it had taken in its sentencing memorandum, the government argued that a three-level adjustment for being a manager or supervisor was warranted, noting that Guerrero, at a minimum, had supervised Juan Carlos Gomez-Preciado, who had served as Guerrero's bodyguard during the scheme. Guerrero argued that neither a three-level or four-level role-in-the-offense adjustment was warranted because he had acted as an independent contractor in what was essentially a flat, non-hierarchical market, and because he had not organized or supervised any other person during the scheme, including Gomez-Preciado.

After hearing argument, the district court found that Guerrero merited a three-level adjustment for being a supervisor of criminal activity, finding that he organized the activity and

supervised at least one individual – Gomez-Preciado – and likely supervised other individuals as well.  In making that finding, the court stated that it was basing it on the video and tapes from the evidentiary hearing, and, "as I'm thinking out loud," was not basing it on what Gomez-Preciado might have said at his sentencing.  Guerrero noted his objection to the three-level adjustment.

After denying Guerrero's motion for a downward departure, the court calculated Guerrero's TOL to be 38 and his CHC to be I, which resulted in a GSR of 235 to 240 months due to the statutory maximum penalty for the offenses of conviction.  After hearing the parties' sentencing recommendations and Guerrero's allocution, the court sentenced Guerrero to 144 months' imprisonment and three years of supervised release.

## Argument

Guerrero claims his counsel was constitutionally ineffective for the following reasons: First, Guerrero argues that his counsel failed to challenge the indictment on multiplicity and duplicity grounds.  See Petitioner's Motion at pg. 20.  Second, Guerrero argues that his plea was not knowingly and voluntary.  Id. at pg. 26.  Third, Guerrero argues that his counsel was ineffective in failing to obtain a plea agreement that obligated the government to file a 5K1.1 motion for downward departure.  Id. at pg. 28; 68.  Fourth, Guerrero argues that his counsel failed to challenge the money laundering indictment on merger grounds.  Id. at pg. 33.  Fifth, at the sentencing phase, Guerrero argues that his counsel failed to object to the amount of drug money for which he was held accountable (at least $12 million) (Id. at pg. 27) and failed to persuasively argue that he was not entitled to a three-level role in the offense enhancement.  Id. at pg. 46.

A.      **Legal Standard**

Under the well-known test enunciated in <u>Strickland v. Washington</u>, to establish that he was denied the effective assistance of counsel in violation of the Sixth Amendment, Defendant must show (1) that counsel "made errors so serious" that representation fell below "an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense" so as to "deprive the defendant of a fair trial." 466 U.S. 668, 687 (1984).  In such a motion, a defendant bears a "very heavy burden." <u>Campuzano v. United States</u>, 976 F. Supp. 2d 89, 98 (1st Cir. 2013) (quoting <u>Argencourt v. United States</u>, 78 F.3d 14, 16 (1st Cir. 1996)).  In the First Circuit, "a lawyer's performance is deficient under Strickland only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." <u>Id</u>. (quoting <u>United States v. Rodriguez</u>, 675 F.3d 48, 56 (1st Cir. 2012)) (internal quotation marks omitted).

A defendant must also overcome a strong presumption that the claimed errors might, in fact, be considered sound trial strategy. <u>See</u> <u>Matthews v. Rakiey</u>, 54 F.3d 908, 916 (1st Cir. 1995). An attorney's decisions are to be viewed "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." <u>United States v. Natanel</u>, 938 F.2d 302, 309 (1st Cir. 1991).

Furthermore, the Sixth Amendment does not guarantee Defendant perfect representation. <u>See</u> <u>Arroyo v. United States</u>, 195 F.3d 54, 55 (1st Cir. 1999) ("[C]ounsel is not incompetent merely because he may not be perfect," because "[i]n real life, there is room not only for differences in judgment, but for mistakes."). "Tactical decisions, whether wise or unwise, successful or unsuccessful cannot ordinarily form the basis of a claim of ineffective assistance."

United States v. Ortiz Oliveras, 717 F.2d 1, 3-4 (1st Cir. 1983). Other courts in this circuit have

held that failure to make a downward departure request does not constitute ineffective assistance

of counsel. See De-La-Cruz v. United States, 865 F. Supp. 2d 156, 167 (D.P.R. 2012).

As further described below, Guerrero cannot maintain his burden on any of these counts.

**B.      Guerrero's Counsel was Not Ineffective for Failing to Challenge the Indictment on Multiplicity/Duplicity Grounds**

"An indictment is multiplicitous and in violation of the Fifth Amendment's Double

Jeopardy Clause if it charges a single offense in more than one count." United States v.

Brandon, 17 F.3d 409, 422 (1st Cir. 1994).  "The critical inquiry is whether Congress intended to

punish each statutory violation separately." Jeffers v. United States, 432 U.S. 137, 155, 97 S.Ct.

2207, 53 L.Ed.2d 168 (1977).

A related concern is "duplicity," the joining in a single count of two or more distinct and

separate offenses. United States v. Verrecchia, 196 F.3d 294, 297 (1st Cir. 1999). As the First

Circuit stated, "the prohibition against duplicitous indictments arises primarily out of a concern

that the jury may find a defendant guilty on a count without having reached a unanimous verdict

on the commission of any particular offense." United States v. Valerio, 48 F.3d 58, 63 (1st

Cir.1995).

Here, Guerrero counsel was not deficient in raising these issues because the charges in

the indictment were neither multiplicitous nor duplicitous.  In each of the substantive money

laundering charges against Guerrero (Counts 4-6, 8-9, and 11-16) the unit of prosecution was the

"financial transaction" which in this case was a "transaction . . . involving the movement of

funds by wire or other means[.]" 18 U.S.C. § 1956(c)(4). The statute further makes clear that "a

transfer of funds from [one] place to another, by wire or any other means, shall constitute a single, continuing transaction." 18 U.S.C. §1956(i)(3).

As made clear in the indictment and at the evidentiary hearings in this case, the goal of the laundering transactions was to transfer the value of the drug money from the United States, and elsewhere, back to Colombia from where the drugs originated. Thus, following the statute, the indictment charged as single transactions not just the original transfer of U.S. currency to undercover agents (the money drops), but the subsequent wire transfer of the funds from an undercover bank account to the account used to launder the drug money either in Venezuela or the BMPE in Colombia.

For this reason, there is simply no viable argument that the government charged the same event more than once. The counts, were thus, not multiplicitous; that is charged multiple times in different counts.  Nor were laundering transactions duplicitous; that is improperly combined into a single count.  Again, the goal was to transfer the value of the drug money to Colombia and transactions, as the statute provides, were a "single, continuing transaction." 18 U.S.C. §1956(i)(3).  Each of these separate transfers was related to specific "contrast" to collect and launder the drug money and were each within a discrete time period.  See e.g., United States v. Hall, 434 F.3d 42, 54 n.4 (1st Cir. 2006) (charging series of related "sub-transactions" as a single transaction is not duplicitous); see also United States v. Prescott, 42 F.3d 1165, 1166 (8th Cir. 1994) (charging multiple financial transactions as a continuing course of conduct in a single count is duplicitous); United States v. Stewart, 256 F.3d 231, 239-41 (4th Cir. 2001) (although a wire transfer comprises two transactions—a deposit and a withdrawal—if the same defendant is

involved in both steps, he may be charged with conducting a single compound, or continuing, transaction).

**C.      Guerrero's Cannot Challenge that His Plea was Not Knowing and Voluntary on Collateral Attack**

The case law in this area is clear.  As a general matter, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (cited in Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014)). There are limited exceptions. For example, "a prisoner can collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir.2006); see Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).  To prevail on this ground, a defendant must make two showings. "First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea." Id. at 290. "Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." Id.

In this case, Guerrero has not made allegations of misconduct or newly discovered evidence.  Instead, Guerrero simply avers that his counsel did not adequately explain to him the consequences of plea.  The court, however, went through an exhaustive plea hearing with the defendant which, prior to the plea, included side-bar conferences to explain the full breadth of defendant's situation before pleading guilty shortly before trial.

**D.      Guerrero Had No Procedural or Substantive Right to a Government Plea Agreement**

Third, Guerrero argues that his counsel was ineffective in failing to obtain a plea agreement that obligated the government to file a 5K1.1 motion for downward departure.  But under Supreme Court case law "there is no constitutional right to plea bargain[.]" Weatherford v. Bursey, 429 U.S. 545, 561 (1977).  Nor does Guerrero allege that he would have proceeded to trial. See Missouri v. Frye, 132 S. Ct. 1399, 1405–06, 182 L. Ed. 2d 379 (2012) ("But the defendant had not alleged that, even if adequate advice and assistance had been given, he would have elected to plead not guilty and proceed to trial").  Instead, Guerrero's sole argument, is that his counsel should have received a better deal. The argument has no merit. Guerrero pled guilty on the eve of trial and was the lead defendant in a massive money laundering operation.  For this reason, it cannot be said that his counsel was constitutionally ineffective especially given the fact that Guerrero received a sentence (144 months) substantially below the advisory guideline range (262 to 327 months).

**E.      There Was No Merger Issue**

Guerrero's fourth argument is that his counsel was constitutionally ineffective for failing to argue that the money laundering charges merged the sole drug charge in the indictment, which alleged in Count Two a conspiracy to import cocaine in the United States.  This argument also misses the mark.

In United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), a plurality of the Supreme Court concluded that the term "proceeds" under § 1956(a)(1) means "profits" rather than "receipts" in the context of an illegal gambling operations where payments

to betters (an essential part of the gambling operation) were also charged as substantive money laundering counts and thus "merged" with the gambling offense without a showing that money paid in laundering transactions were "profits" and not just "gross receipts." Id. at 2031. To make this showing, however, the plurality in Santos also noted that "the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money involved in the charged transaction." Id. at 520. Furthermore, in 2009 a broader definition of "proceeds" was added to § 1956 to include "gross receipts." See Fraud Enforcement and Recovery Act of 2009, Pub L. No. 111–21 § 2, 123 Stat. 1617.

Here, the laundering charges were entirely separate and apart from the evidence that Guerrero conspired with others (including Gomez-Preciado and Torres) to import cocaine into the United States. The money laundering transactions involved various "contracts" to pick up drug money in the United States and elsewhere and move the value of that money back to Colombia through either Venezuela or the BMPE. The drug importation conspiracy, in contrast, involved an attempted effort with Guerrero, Gomez-Preciado, and Torres to sell cocaine to undercover agents. The two crimes, while related, were entirely separate endeavors. For this reason, it cannot be said, as Justice Steven noted in Santos, that the laundering transactions were "mere payments" of necessary expenses. See United States v. Foley, 783 F.3d 7, 16 (1st Cir. 2015); Santos, 553 U.S. at 527, 128 S.Ct. 2020 (Stevens, J., concurring).

Accordingly, since the argument itself had no merit, Guerrero's counsel was not ineffective in not raising the issue.

**F.      Sentencing Issues**

Guerrero's last remaining arguments pertain to the sentencing phase of the case. Guerrero argues that his counsel failed to object to the amount of drug money for which he was held accountable (at least $12 million) and failed to persuasively argue that he was not entitled to three-level role in the offense enhancement. These arguments truly have no merit.

First, the evidence regarding the amount of laundering funds was overwhelming and included hundreds of hours of undercover recorded conversations, wiretaps, e-mail search warrants, and bank records showing the money down to the penny.  While Guerrero's point that he only received a fraction of the money laundered as profits, it does not alter the fact that Guerrero played a substantial role in laundering over $12 million in drug money.

Second, Guerrero's argument that his counsel should have prevailed on the argument on role in the offense is the same argument that he made on direct appeal. That argument was rejected because while no a hierarchical structure, Guerrero played an advisory role over at least one other participant in an extensive operation.

Finally, it should be noted that while Guerrero's advisory guidelines were a range of 262 to 327 months, Guerrero received a sentence of 144 months, substantially below the advisory guideline range.

## CONCLUSION

For the foregoing reasons, the petition filed pursuant to 28 U.S.C. § 2255 should be

denied without the need of any further hearing.

By:    /s/ *Neil Gallagher*
Neil J. Gallagher, Jr.
Assistant U.S. Attorney

Date Submitted:  September 19, 2016

Certificate of Service

I hereby certify that this document filed through the ECF system will be mailed to:

ALDO FERNANDO GUERRERO-CLAVIJO
Inmate Registration No. 94377-038
FCI HERLONG
741-925 ACCESS ROAD A-25
HERLONG, CA  96113

*/s/ Neil J. Gallagher, Jr.*
Neil J. Gallagher, Jr.